# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| TURIQUE PATRICK-PEREZ, | : | |
|---|---|---|
| Plaintiff | : | CIVIL ACTION NO. 3:18-2202 |
| v. | : | (JUDGE MANNION) |
| LACKAWANNA COUNTY SHERIFF'S OFFICE and LACKAWANNA COUNTY, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court is a motion to dismiss the plaintiff's complaint, (Doc. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the defendants, Lackawanna County Sheriff's Office and Lackawanna County. (Doc. 10). For the following reasons, the defendants' motion to dismiss will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

According to the facts set forth in the complaint[1], the plaintiff, an African-American male, has been employed by the defendant, Lackawanna

---

[1] For the purposes of the instant motion to dismiss the court must take the allegations of the plaintiff's complaint as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).

County Sheriff's Office, as a deputy sheriff since 2003. During the times relevant to this action, he was assigned to the warrant division of the Sheriff's Office and, until 2016, was the only person of color employed by the Sheriff's Office.

During the summer of 2015, the plaintiff was referred to as "Mo Brown," which he understood to be a racial slur, on a daily basis by his direct supervisor, Sgt. Glenn Ford. Additionally, the plaintiff received racially offensive text messages from Sgt. Ford, including one depicting former President Barack Obama as a terrorist. After incidents of African Americans being shot by law enforcement in other parts of the country, Sgt. Ford and Sgt. Jason Oakley would ask the plaintiff about African Americans burning down buildings and rioting, and told the plaintiff that "a civil war was coming again" and that "the enema is coming." During this time, Sgts. Ford and Oakley would forward phone calls from African Americans to the plaintiff, remarking that the callers were "not even fucking speaking English," and would laugh about the plaintiff being able to understand what the callers were saying.

On August 27, 2015, the plaintiff verbally complained to Sheriff Mark McAndrew about the above described incidents. Sheriff McAndrew responded by asking the plaintiff to hold off on moving forward with filing a

grievance to allow him time to develop a policy to address fraternization and told the plaintiff that he would have an opportunity to address it before it was issued. However, on August 28, 2015, the plaintiff filed a grievance based upon his complaint to Sheriff McAndrew.

On September 23, 2015, a meeting was held to try to resolve the plaintiff's grievance, as well as to discuss Sheriff McAndrew's fraternization policy that was aimed at correcting racially hostile environments. The defendants' human resource director, Brian Loughney, attended the meeting and concluded that the plaintiff's allegations were too general. The defendants ultimately decided to take no action and requested that the plaintiff withdraw his grievance. The plaintiff was told that Mr. Loughney would send him the new policy regarding harassment, hostile work environment, and retaliation, however, no new policy was made.

In the following months, Sgt. Ford refused to speak to the plaintiff regarding assignments and would instead provide him with them on written notes. Sgt. Ford would only speak to the plaintiff if the plaintiff came to him with an issue that needed to be addressed.

On or about January 28, 2016, the defendants removed the plaintiff from his position in the warrant office and placed him in the less desirable and more dangerous assignment of prisoner transport, effective February

22, 2016. After the plaintiff's complaint about this transfer, the defendants returned him to the warrant office on or about March 9, 2016, where Sgt. Ford continued his practice of giving the plaintiff his assignments via written notes while providing other, non-African American deputies their assignments verbally.

Upon the plaintiff's return to the warrant unit, he learned that Sgt. Ford had sent four members of the warrant unit a text message stating that he was unhappy about the plaintiff's return to the unit. The plaintiff reported the text message to Mr. Loughney on March 17, 2016 and on April 4, 2016 after initially receiving no response. Mr. Loughney responded that Sgt. Ford's text message was "not problematic" and took no corrective action. On or about March 17, 2016, the plaintiff also informed Sheriff McAndrew that he did not feel safe at work. However, the plaintiff alleges that the racial harassment persisted despite his complaints.

On or about April 7, 2016, the plaintiff discovered an e-mail that had been received and printed by Sgt. Ford that supported the election of Donald Trump as president and called for the extermination of "rabid, messy, mean raccoons." The plaintiff understood the term "raccoons" to refer to African Americans, and perceived the e-mail to be another instance of racial harassment by Sgt. Ford. The plaintiff promptly complained about the e-mail

to Mr. Loughney. However, Mr. Loughney informed the plaintiff that no action would be taken because he did not believe the e-mail to be a direct attack on the plaintiff and stated that nobody insinuated that the e-mail was about him.

On June 2, 2016, the plaintiff was again transferred from the warrant unit to the prisoner transport unit, where he remained until May, 2017. Subsequently, on or about August 22, 2016, Sheriff McAndrew requested the plaintiff come to his office, whereupon he showed the plaintiff a picture of a black athlete running in a race while carrying a television. Sheriff McAndrew told the plaintiff it had come from the social media account of another Lackawanna County Deputy Sheriff and asked the plaintiff what he thought of the picture. The plaintiff told Sheriff McAndrew that he found it offensive and insisted that Sheriff McAndrew do something about it.

The plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging discrimination and retaliation based on his race. The plaintiff cited his 2015 complaint to Mr. Loughney about Sgt. Ford's and Sgt. Oakley's conduct, the subsequent meeting, his first transfer to the prisoner transport division, and the subsequent investigation by the defendants. The plaintiff then filed an amended charge with the EEOC and PHRC alleging

discrimination in violation of Title VII based on his race and retaliation for engaging in protected activity. In his amended charge, the plaintiff cited his second transfer to the prisoner transport division as well as the social media post shown to him by Sherriff McAndrew on August 22, 2016. On October 19, 2017, the EEOC issued its determination, concluding that the evidence obtained during its investigation established a violation of Title VII.

On November 13, 2018, the plaintiff filed his complaint with this Court. (Doc. 1). The plaintiff's complaint contains six counts: (I) discrimination on account of race and color under Title of VII of the Civil Rights Act of 1964 ("Title VII"); (II) retaliation under Title VII; (III) discrimination based on race, national origin, and color in violation of the Pennsylvania Human Relations Act ("PHRA"); (IV) retaliation in violation of the PHRA; (V) racial harassment under Title VII; and (VI) racial harassment in violation of the PHRA. On January 14, 2019, the defendants filed the instant motion to dismiss for failure to state a claim, (Doc. 10), and filed a brief in support of their motion on January 28, 2019, (Doc. 11). On February 12, 2019, the plaintiff filed a brief in opposition to the motion. (Doc. 12). The defendants then filed a reply brief on February 26, 2019, (Doc. 15), and the plaintiff subsequently filed a sur-reply brief on March 25, 2019, (Doc. 19).

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. Venue is proper in this district pursuant to 28 U.S.C. §1391.

**II. STANDARD OF REVIEW**

Defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 545. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to

relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents," Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Fankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint rather than dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson

v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F. 3d 229, 236 (3d Cir. 2004).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies for Color and National Origin Discrimination Claims

The defendants first argue that the plaintiff's color and national origin discrimination claims should be dismissed for failure to exhaust administrative remedies because the plaintiff did not check the boxes for "National Origin" or "Color" discrimination on his EEOC Charge of Discrimination. Before a plaintiff may file a Title VII claim in federal court, he must file a complaint with the EEOC. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Here, there is no dispute that the plaintiff properly complained to the EEOC about his claim of racial discrimination. The issue is whether the plaintiff's EEOC complaint also encompasses the plaintiff's claims of color and national origin discrimination.

The relevant inquiry in determining whether claims have been administratively exhausted is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the

investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters, 729 F.2d at 237). Put another way, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Webb v. City of Phila., 2007 WL 210405, at *2 (E.D.Pa. Jan. 23, 2007). Therefore, despite the defendants' argument to the contrary, the mere failure to check a specific box on the EEOC charge is not a fatal error. See Doe v. Kohn Nast & Graf, P.C., 866 F.Supp. 190, 196 & n. 2 (E.D.Pa. 1994).

Additionally, the defendants argue that the plaintiff's allegations of racial discrimination in his EEOC charge do not inherently preserve allegations of color or national origin discrimination, and that no facts alleged by the plaintiff support such allegations. In considering this argument, the court must view allegations in a light most favorable to the plaintiff. The plaintiff points to Sgt. Ford repeatedly referring to him as "Mo Brown" as an example of color discrimination and to Sgt. Ford's text message depicting former president Barack Obama as a terrorist as an example of the national origin discrimination that the plaintiff suffered. While the plaintiff's claims as to these forms of discrimination may be thin, the factual allegations set forth

in the plaintiff's complaint are sufficient to survive the defendants' motion to dismiss. In light of the above, the defendant's motion to dismiss the plaintiff's complaint for failure to exhaust his administrative remedies will be denied.

**B. Failure to State a Claim of Retaliation for Lack of Adverse Employment Action**

Next, the defendants argue that the plaintiff has failed to plead facts sufficient to sustain a claim of retaliation. The plaintiff alleges that his two transfers from the warrant unit to the prisoner transport unit were in retaliation for his complaints of racial discrimination and harassment.

In order to plead a retaliation claim in violation of Title VII, the plaintiff must show: (1) he engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal connection between participation in the protected activity and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). The defendants only argue that the plaintiff has failed to establish that he suffered an adverse employment action as required to state a claim of retaliation.

To show that he suffered an adverse employment action for the purposes of a Title VII claim of retaliation, a plaintiff must demonstrate that a reasonable employee would have found the alleged retaliatory action materially adverse such that it might have dissuaded a reasonable worker from making or supporting a discrimination charge. Burlington N. & Santa Fe

Ry. Co. v. White, 548 U.S. 53, 68 (2006). The standard is phrased in general terms because the significance of any given retaliatory act will depend on the circumstances. Id. at 69. The plaintiff argues that his two transfers from the warrant division to the "less desirable and more dangerous" prisoner transport unit constitute an adverse employment action. The defendants, on the other hand, insist that the transfers were merely lateral transfers and, therefore, not materially adverse.

Assuming it is true that the prisoner transport unit is more dangerous and less desirable, then the plaintiff's transfers from the warrant division to the prisoner transport unit were not mere changes of title or minor actions that generally fall short of constituting an adverse employment action. See Barnes v. Nationwide Mut. Ins. Co., 598 Fed.Appx. 86, 90 (3d Cir. 2015) (holding that "lateral transfers and changes of title" generally do not constitute adverse employment actions); Langley v. Merck & Co., Inc., 186 Fed.Appx. 258, 260 (3d Cir. 2006) (holding that "minor actions," such as "changes of title and reporting relationships," do not generally constitute adverse employment actions). Instead, the court finds that a transfer to a more dangerous position is materially adverse such that it may have dissuaded a reasonable employee from making or supporting a discrimination charge. Therefore, the plaintiff has plead sufficient facts to

support his retaliation claim, and the defendants' motion to dismiss the plaintiff's complaint on this basis will be denied.

### IV. CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss is **DENIED**. An appropriate order shall follow.

*s/ Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 13, 2019**
18-2201-01